STATE OF MAINE
YORK, ss.

SUPERIOR COURT
Civil Action
Docket No. CV-16-0213

PETER DONAHER, III, and
SUSAN DONAHER,

       Plaintiffs

    v.

MARCUS VANNINI a/k/a
MARCUS STUART,
MAGGIE MACRI,
AIRBNB, INC., and
AIRBNB PAYMENTS, INC.,

       Defendants

**ORDER ON DEFENDANTS
AIRBNB AND AIRBNB
PAYMENT'S MOTION TO
DISMISS**

Plaintiffs Peter Donaher, III, and Susan Donaher filed a four-count complaint against Marcus Vannini and Maggie Macri alleging breach of a lease contract, unjust enrichment, fraudulent misrepresentation, and invasion of privacy. Plaintiffs also named Airbnb, Inc. and Airbnb Payments, Inc.'s (collectively "Airbnb") as party defendants on all but the breach of contract claims. Airbnb has filed a motion to dismiss and/or motion for judgment on the pleadings, contending that all three claims against Airbnb are barred by section 230 of the Communications Decency Act (CDA). *See* 47 U.S.C. § 230. Hearing on the motion was held on July 12, 2017.[1] For the reasons set out below, the motion is granted.

## I. Facts

The following facts are set forth in the complaint. Plaintiffs own property in Kennebunk, Maine. (Compl. ¶ 1.) They leased the property to Vannini and Macri

---

[1] Defendants Vannini and Macri, who are self-represented, did not appear for the hearing. They filed a motion to continue on July 10, 2017, two days before the hearing. The motion was denied.

from September 2014 to September 2015. (*Id.* ¶¶ 10, 13-14.) Plaintiffs allege Vannini and Macri violated a number of the provisions in the lease, including the prohibition on subleasing the property. (*Id.* ¶¶ 12, 19.)

Airbnb, Inc. is a Delaware corporation based principally in California. (*Id.* ¶ 4.) Airbnb Payments, Inc. is also a Delaware corporation. (*Id.* ¶ 5.) Plaintiffs' complaint treats the two Airbnb corporations as the same unless otherwise noted. (*Id.* ¶ 6.) The complaint states Airbnb (referring to the corporations collectively) is an internet business that facilitates "the posting of rental opportunities at the host's property, by providing the means for guests to locate and book host properties, and by processing payments from guests to hosts, from which Airbnb derives revenue." (*Id.* ¶¶ 7-8.)

Vannini registered as a "host" with Airbnb and listed the Donahers' house for rent on Airbnb's website to potential "guests." (*Id.* ¶¶ 20-24.) The house was in fact rented through Airbnb's website. (*Id.* ¶¶ 28-29.) Plaintiffs notified Airbnb that Vannini and Macri did not have a legal right or plaintiffs' consent to sublet the property. (*Id.* ¶ 25.) Airbnb did not respond to plaintiffs or remove the listing despite provisions in its user agreement prohibiting such use of its website. (*Id.* ¶¶ 21, 24-29.)

## II. Conclusions

### A. Standard of Review

The standard applied to a motion to dismiss for failure to state a claim is the same as that applied to a motion for judgment on the pleadings. *MacKerron v. MacKerron*, 571 A.2d 810, 813 (Me. 1990). "Both . . . 'test[] the legal sufficiency of the complaint.'" *Id.* (quoting 1 Field, McKusick & Wroth, *Maine Civil Practice*, § 12.11 at 248 (2d ed. 1970)). "[A] complaint is sufficient unless it appears *to a certainty* the

2

plaintiff is entitled to no relief under any set of facts he might prove in support of his claim." *Id.* (quoting *Forbes v. Osteopathic Hospital of Maine*, 552 A.2d 16, 18 (Me. 1988) (emphasis in original)). Airbnb claims as a matter of law it is immune from Plaintiffs' claims under Section 230.

### B.    47 U.S.C. § 230

Section 230[2] of the CDA bars State claims if "(1) [defendant] is a 'provider or user of an interactive computer service';[3] (2) the claim is based on 'information provided by another information content provider';[4] and (3) the claim would treat [defendant] 'as the publisher or speaker' of that information." *Universal Commun. Sys. v. Lycos, Inc.*, 478 F.3d 413, 418 (1st Cir. 2007); *see also* 47 U.S.C.S. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.").

---

[2] Section 230 provides in relevant part as follows:

(c) Protection for "Good Samaritan" blocking and screening of offensive material.
(1) Treatment of publisher or speaker. No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.
(2) Civil liability. No provider or user of an interactive computer service shall be held liable on account of—
(A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or
(B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1) [subparagraph (A)].

[3] Section 230(f)(2) defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions."

[4] Section 230(f)(3) defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."

3

The immunity provided by section 230 is construed broadly in order "to effectuate Congress's 'policy choice . . . not to deter harmful online speech through the . . . route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages.'" *Universal Commun. Sys.*, 478 F.3d at 418-19 (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330-31 (4th Cir. 1997)). "The broad construction . . . has resulted in a capacious conception of what it means to treat a website operator as the publisher or speaker of information provided by a third party." *Doe v. Backpage.com, LLC*, 817 F.3d 12, 19 (1st Cir. 2016). Whether a defendant is immune under section 230 ultimately "does not depend on the form of the asserted cause of action; rather, it depends on whether the cause of action necessarily requires that the defendant be treated as the publisher or speaker of content provided by another." *Id.*

At the heart of plaintiff's claims against Airbnb is their allegation that Airbnb failed to take down Vannini and Macri's post offering plaintiffs' house for rent on Airbnb's website. A decision not to delete a particular posting is an editorial decision. *Universal Commun. Sys.*, 478 F.3d at 422. "Lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions -- such as deciding whether to publish, withdraw, postpone or alter content -- are barred." *Zeran*, 129 F.3d at 330; *see also Universal Commun. Sys.*, 478 F.3d at 422. Plaintiffs' claims against Airbnb necessarily treat it as the publisher of the content.

Plaintiffs also assert Airbnb does not satisfy the two other prerequisites for immunity. Specifically, they argue that Airbnb Payments, Inc. may not be an interactive computer services provider and argues Airbnb is at least in part the "information content provider." Neither argument is persuasive.

Plaintiffs contend "if Airbnb Payments, Inc., is in fact a payment processing

4

business, and not a website operator, then it would not be entitled to any protection under the CDA." (Pl's' Opp'n Mot. Dismiss 2-3.) First, just as plaintiffs treat the Airbnb entities as a collective entity in their complaint, courts have treated affiliated business entities collectively for the purpose of section 230 claims. *See Backpage.com, LLC*, 817 F.3d at 16 n.1 ("The appellants sued Backpage.com, LLC, Camarillo Holdings, LLC, and New Times Media, LLC. For ease in exposition, we refer to these three affiliated companies, collectively, as 'Backpage.'"). Second, the processing or receipt of payments associated with posts does not strip a provider or user of an interactive computer service of immunity under the CDA. *See id.* (holding Backpage's acceptance of anonymous payments from information content providers did not distinguish its functions from publisher functions); *see also Hill v. StubHub, Inc.*, 219 N.C. App. 227, 727 S.E.2d 550 (2012). Finally, "there is . . . no need here to decide whether [defendant] fits the broad statutory definition of 'interactive computer service,' because the language of § 230(c)(1) confers immunity not just on 'providers' of such services, but also on 'users' of such services." *Batzel v. Smith*, 333 F.3d 1018, 1030 (9th Cir. 2003).

Second, plaintiffs rely on *Federal Trade Commission v. Accusearch, Inc.* in support of their argument that Airbnb was an information content provider. 570 F.3d 1187 (10th Cir. 2009). *Accusearch* is easily distinguishable from the facts of this case. Accusearch's subsidiary company, Abika.com, provided personal data, including telephone records, in response to customer orders. The 10th Circuit described the process as follows:

> In placing a search order, a customer paid Accusearch an administrative search fee and selected the type of search desired, not a specific researcher or a search identified with a specific researcher. Accusearch would forward the search request to a researcher who could fulfill it. After completing a search, the researcher would send the results to Accusearch and bill Accusearch directly. Accusearch would then email the results to the customer and post them on the customer's Abika.com account. A

5

customer could know that a third-party researcher was involved in a transaction only by reading boilerplate contained on the website and in Accusearch's email correspondence. And even then, the customer was not provided contact information for any researcher.

*Id.* at 1191. The Court of Appeals held Accusearch was responsible for the development of the specific content that was the source of the alleged liability based on that process. *Id.* at 1199 ("It knowingly sought to transform virtually unknown information into a publicly available commodity. . . [T]he record shows, Accusearch knew that its researchers were obtaining the information through fraud or other illegality.") In contrast, Vannini and Macri are alleged to have posted plaintiffs' house for rent on Airbnb. The definition of information content provider includes those that create or develop information "in whole or in part." § 230(f)(3). Even if Airbnb did create or develop part of the content of the post, it is still immune because another content provider, Vannini and Macri, created the post at least in part. *Universal Commun. Sys.*, 478 F.3d at 419-421.

Thus, the claims plaintiff brings against Airbnb are barred by section 230 of the CDA.

### III. Order

For the reasons articulated above, Defendants Airbnb, Inc. and Airbnb Payments, Inc.'s motion to dismiss and/or for judgment on the pleadings is GRANTED.

SO ORDERED.

The clerk may incorporate this order upon the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated:   August 18, 2017

_____
Wayne R. Douglas
Justice, Maine Superior Court

6

CV-2016-213
<u>ATTORNEY FOR PLAINTIFF</u>
JEFFREY ZDUNCZYK
ZDUNCZYK LAW OFFICE
P O BOX 771
KENNEBUNK ME  04043

<u>ATTORNEYS FOR DEFENDANT:</u>
MICHAEL DONLAN
SETH S COBURN
VERRILL DANA LLP
PO BOX 586
PORTLAND ME  04112

TWO DEFENANTS PRO SE:
MARCUS VANNINI
MAGGIE MACRI
286 MACLEAN ROAD
ALSTEAD NH 03602